Good morning. May it please the Court, my name is Jeffrey Martins and I represent the petitioner in this matter, Ms. Begerma Dorj. And I'd like to reserve three minutes of my time if possible. In this matter, both the judge and the judge. You have a clock and you know how much time you have and try to keep track of it and reserve it. Thank you, Your Honor. Best way to reserve it is to sit down. In this matter, the judge and the board denied asylum based on a finding that a particular social group of Mongolian women forced into prostitution because of their particularity and social visibility and because of a lack of a nexus between the harm that she feared and the protected ground. In the government supplemental brief that was recently submitted to the court, the government largely conceded that Enriquez Rivas is dispositive of the particularity element and that that part of the board's decision is no longer valid. Could you speak up a little? Sure, I'm sorry. Why don't you move the microphone up just a hair? You can lift it up. However, the government continued to argue that the particular social group in this case does not possess the social distinction now element. So I'd like to begin with just a few comments regarding that element. Well, as a preliminary matter, are we settled on the social group? You raised the argument in the brief that the IJ did not address the proffered social group. Are you withdrawing that argument now? Well, Your Honor, I don't like to withdraw arguments in general, but I don't think it's really necessary for the court to consider that argument in order to reach a conclusion. Well, we do if we're going to. We do need to consider it. So I'm not sure you want to keep that social group, do you? No, not particularly. I think the social group that the board and the judge considered is sufficient. You've said that right now. To establish eligibility. Yes, Your Honor. Yes. So while before you use all your time, I would like to ask you to use part of it to discuss the Convention Against Torture. OK. I can do that. The Convention Against Torture does not require there to be a nexus in this regard. The element that I think that was a problem for the judge and the board was the lack of government involvement in the Convention Against Torture. Well, the board's decision doesn't mention the fact that it accepts as true that the torturer, if he be a torturer, as was engaged in a conspiracy with the police. Right. Yeah, and I think there is evidence in the record to – for the court to reach that conclusion and to remand for that decision. But I think there's enough evidence regarding her eligibility for asylum that the court should remand. Well, just in case there isn't, you might just take a minute of your time to discuss the Convention Against Torture. And you've already said it doesn't require a social group. That's true, Your Honor, yes. OK. All right. Well, first, I just want to make a couple of comments about the social distinction element, because I think that there is enough evidence for the court to find that the particular social group in this case is a legally cognizable group that is sufficient for establishing eligibility for asylum. The evidence in this case – Was it Mongolian women or young Mongolian women who have been subjected to persecution in the form of being sold into slavery? That's correct, Your Honor. I think – And what is the basis for the persecution of that group? I'm sorry. What is the basis? When the persecution existed, it was being sold into slavery. Yeah. I mean, there was other persecution as well in this case, which I think was part of the problem with the Board's analysis. I don't – what I understand the court to be asking really about is more about the nexus issue in this case than social visibility. Is that what the Court is trying to ask about? Have you read the two recent cases? Yes, yes. All right. OK. Well, I would raise the question about the nexus. I mean, to what extent is the persecution related to her membership in the group as opposed to her relationship with this guy? Well, the evidentiary record in this case was not very well developed, and I did brief quite a bit about the due process violations that I think Ms. Doerge had suffered from the inadequacy of her counsel and that sort of thing. But I think what's clear is that the Board's analysis regarding the nexus is flawed. They repeatedly – and the judge's decision also said that Ms. Doerge was a victim of crime. And I think the reason for that was really that they were focused on the fact that Casa, the main persecutor in this case, was a criminal, so that his motivations had to be criminal in nature. But I think what the Board and the judge failed to realize is that all victims of human rights abuses are also going to be victims of crime. The real question is, why did that person suffer the harm that they did? Why did that crime take place? And why did it take place? Well, that's where I think the record needs to be developed more and why the Court should remand, because – Well, why wasn't it developed initially? Is that ineffective assistance of counsel? Yes, Your Honor. I believe so, yes. So then is the thrust of your argument, the main focus of your argument, the ineffective assistance of counsel or the fact that the record was not adequately preserved or taken down because of the translation problems? Is that – And we have to find that to be able to – No, I don't think you have to find that, but I think it's an important element. When the Court reviews the transcript, I think the problems with the translation and the understanding and the representation are pretty – pretty manifest. You know, I don't think a fair reading of this record would allow the conclusion that Ms. Dorsch had her fair day in court to explain everything fully. But there's a real human trafficking problem in Mongolia. Yes. And to what extent can this Court recognize that there might be that – that essential group, that is, people who are human trafficked, as a then connection to this particular circumstance? Well, the evidence certainly shows that Ms. Dorsch was a victim of trafficking. And where does that leave you with your case? What – what is the connection between human trafficking and your claims? Does it affect your asylum claim, your withholding claim, your cat claim? Well, it affects mainly the asylum and withholding because that's the particular social group. That's the protected ground on which she is applying for asylum. Maybe I'm not understanding the Court's question. No. But you did try to get additional new evidence before the Board, did you not, about human trafficking as a real problem in Mongolia and China, in this particular area? And to what extent would that have – that information would have – to what extent would that have helped you in defining first the social group and also the nexus? Well, it certainly helps show that the society in question perceives the victims of trafficking as a particular social group. That goes to the social distinction element that needed to be proven in this case. In addition to that, the Mongolian government has passed laws, which I think that fact, which is in the Department of State report, is parallel to Enrique's Rivas, where the Court said that the Salvadoran legislature enacting laws protect witnesses is evidence of the fact that the society perceives that as a distinct, a discrete group within the society there. So why are they likely to get persecuted after they return to Mongolia, after they have survived trafficking? That's – the question is, what – you've got the – I think you have a social group, probably. You have persecution, certainly when they're taken from Mongolia and put into forced prostitution. Right. But your claim is that that social group is persecuted once they return to Mongolia. Right. And tell me what the evidence of the record is in that. Well, the evidence of that is in some of the country reports about how those individuals are subjected to social stigma, to other kinds of problems. They're vulnerable to re-trafficking, all those kinds of issues. Isn't there direct evidence that she testified or put in her application, which they accepted as true, that she was threatened with being killed if she returned? Yes, and threatened with re-trafficking. And that this individual who threatened to kill her was in cahoots with the police? Yes, that's correct, Your Honor. Yes. So isn't that your basic – But she made the complaint, the law enforcement officials took the complaint, and then she withdrew the complaint, did she not? Did she ask that the law enforcement not complete the investigation because of fears that she may have had of this Mr. Keisha? Right, Your Honor, because of the additional threats to her right. So she withdrew the complaint for law enforcement to investigate his background? Partly because of the death of another acquaintance of Kassa, who she felt demonstrated that the law enforcement was not going to offer her the protection that she needed. I thought he was the main administrator of financial regulation, and he was executed, or killed, I guess. Yes, Your Honor. Right. But he didn't form part of the social group you're talking about. See, the problem I have – the government – you said these are victims of – we have to take the criminal element out of it. What I understand the government's argument to be is, look, this is an individual torture case. It's not a governmental torture case or one that you have. Now, I would think that your better argument is that this is a group or person that the government's unwilling to control. But it's really hard for me to see how that translates into a broader theory of nexus against the social group. So help me out. In other words, not everybody who's participated in – who is a victim of trafficking ends up being tortured by this guy. That's correct, Your Honor. So tell me, as a general, why in the Mongolian society that we should say that there is persecution on account of membership in the social group, rather than an individual case where you have an international criminal who's doing it? Well, every case has to be determined on a case-by-case basis. The particular social group is the Mongolian women who are forced into prostitution. And I think that's a legally cognizable group. Diana Konov is, I think, from the individual persecutor's end perspective, what's their motivation. So the particular social group is determined by the society. I think it could also be determined by the persecutor as well. I think the analysis really should be an either-or kind of analysis for determining whether or not it's a viable particular social group. But the motivation of – So in this case, your theory is the persecutor is the person who removed her initially, her fiancé, who took her and forced her into prostitution. So why is – in terms of just applying the law, why is the fact that she was forced into prostitution then subject her to persecution on account of this protected ground? In other words, is he just after her, or is he after her because she was forced into prostitution? Well, I think that's where the evidentiary record is probably the weakest – Well, how can you cure that on remand? Well, because – I'm not quarreling with you. I'm just saying, what's your theory on remand to overcome these evidentiary problems? Because there is a lot more facts that could be presented. I think the problems with the – Ms. Storj's attorney and the interpreter preventing her from answering questions really prevented her from explaining where that direct connection is. But I also think – Aren't you relying upon the State Department report, which was not considered by the BIA? Yes. They refused to consider that because they said you should have been able to give that to the IJ. And doesn't that State Department report talk about human trafficking as a significant problem and create, at least to some extent, a social group, and therefore, then your argument, I would – I don't mean – No, that is my argument. That is your argument. But then you would basically say, well, if she's sent back, then she's going to be into this group, which is now clearly identified, particularized, as it were. Right. Isn't that what you're saying? Yes. That's a well-founded fear argument. There's both past persecution and the well-founded fear. And I think that the State Department report really demonstrates that her well-founded fear is – is well-founded. And of course, they never – they never considered the State Department report. They excluded that from the hearing. Yes, because it should have been available at the time of the court hearing, even though it was produced after the hearing. Thank you, counsel. Okay. Thank you. We'll still give you two minutes to talk. I appreciate that. Thank you, Your Honor. Maybe we can start – well, we know your name, but tell us anyway. Yes. In this case – No, your name again. Oh, my name again? Okay. Just for the record. Oh, yes. All right. My name is Dawn Conrad, and I'm here again on behalf of the Attorney General. In this case, we believe substantial evidence supports the Board's denial of Petitioner's claim that Petitioner's claim was duplicated. So let me start with Judge Sessions, so I'll ask the questions. The Board excluded the State Department report, which came out three months or so after the hearing, on the ground that what? That one ground was that it was duplicative. That's – If it's duplicative, then we can look at it and assume that anything in it is what he's already proved. That's correct, Your Honor. They did it in part because they thought it was cumulative of evidence already in the record, and that also because – If we look at it and think that it's not cumulative, that would be grounds for a remand. No, because also the Board excluded it because Petitioner did not show that her proposed social group was the nexus to her harm or well-founded fear of harm. Why isn't it relevant to well-founded fear? I'm sorry? Could you repeat? Why isn't that particular social group and the State Department report relevant to well-founded fear as opposed to the establishment of past persecution? Because there's absolutely no evidence in the record that Petitioner is being targeted because she was a trafficked woman. What we have is evidence that she was definitely a victim of crime and that her ex-fiancé has personal retribution and does seek to harm her or has threatened her, but we don't have evidence that she's being persecuted or sought because she was a formerly trafficked woman. And I believe – So if the State Department says that trafficked women have a reasonable fear, I'm paraphrasing, or may be vulnerable to re-trafficking when they return, and that's what she says her fear is, why doesn't that establish at least a question of a well-founded fear of future persecution? And you'd agree that trafficking is persecution? Yes. Yes. And I don't know – I can't remember the exact word if the State Department actually said that these women are vulnerable to re-trafficking, but – Let's assume for the sake of argument, and I'll have to recheck, too. Okay. Yes. I know that the reports talk about Mongolia, like, taking prosecutorial action against traffickers, but – because she still has not shown that she has any threat or that there are any – there has been any distinct nexus connecting her to this potential to be re-trafficked. You still have to show – I mean, the board in its recent decisions held that nexus is still required. You can't just show you're a member of a particular social group. You also have to show nexus. And in this case, we don't have evidence of the nexus. Well, I think the nexus is – the argument is that this is a group or an individual that the government is unwilling to control, and that she said, I fear re-trafficking if I return to Mongolia. He's going to kill me. He's going to – or capture me and send me away. And if you accept the premise that this is a vulnerable group and that they are – the persecution in the future is the possibility of re-trafficking, and she's – evidence in the record is that she fears that and probably reasonably does. Why isn't that enough? Because we still – well, first of all, there's some – I agree that there are some issues with the board's decision on the particular social group. Definitely the particularity finding is incorrect. If this Court finds that there is the kind of social visibility evidence that we saw in Henriquez-Rivas or social distinction, right, then we would suggest that they remand to the board so it can reanalyze the particular social group in this case under the new guidance of the new cases and Henriquez-Rivas. Okay. Well, following up on that, why would – why wouldn't it be appropriate to direct a remand to the IJ to start over with this case, as the board suggested in the MRV? And the reason I say that is this case started off with a definition of a particular social group that the IJ then reformulated. And then that's grown – it's gone all the way through here. The IJ never addressed the social group that the applicant proposed. He reformulated that definition, which is – and today he's – your opponent has basically said he's agreeable to the new definition. But we have that. We have the fact that the BIA has now reformulated this entire area. So why wouldn't – why wouldn't it remand even further so we can straighten out these record issues that are present and all these sort out through all the – from the BIA to the IJ and start over with this case? Well, there's a couple issues. One would be the – first of all, in our position, the IJ did look at the proposed social group that the Petitioner at least presented to him orally before the Court. And the proposed social group that the board considered was the one raised in the brief to the board. Yeah. I can't fault the BIA. I mean, in the brief to the board, that social group is identified. The IJ didn't identify it. That's correct. You know, if this Court thinks that there is social visibility evidence that wasn't considered, perhaps it should go back to the – or social distinction evidence that wasn't But I still don't think remand is necessary under the nexus element, because what we don't have, I think, is nexus evidence or any evidence connecting Petitioner's persecution or fear of persecution to her proposed social group. And if I can illustrate, in matter of CC, which is the Seventh Circuit case that Petitioner cited in his, I believe, most recent 28-J letter, the Seventh Circuit looked at a similar social group, I believe it was young Albanian women living alone in Albania. There was expert testimony in that case that these women were particularly vulnerable to trafficking and being sold into prostitution. There was also direct evidence that the individual seeking Petitioner was a well-known trafficker of women and well-known for selling these women into prostitution. We do not have such evidence in this case. What we have is evidence that there is a criminal who sought Petitioner and did harm her. Well, but it could be much broader than that. Based upon the State Department report, apparently that there's a real problem with human trafficking of women. And to what extent is the environment, the general environment in that particular community impacting Mr. Kasha, who then, because this is the common way things are done at this particular point, subjects her to that kind of persecution. And so not only does the State Department report become relevant to Nexus, it's also relevant to social group because it helps define what the social group is here. And, you know, I'm wondering if that requires a full development, factual development, to see if that is true, because that report, you know, that report was not considered. That's correct. Although that report was a lot mostly cumulative of what was in the older report that also said trafficking is a problem in Mongolia. But what we don't have, though, still is any kind of evidence showing that that was Mr. Kasha's motivation. We have her full asylum application, her testimony, and it was she was credible. Everything that she said was consistent. What she did not say was any evidence that Mr. Kasha was targeting her because she was vulnerable to trafficking. And a lawyer who didn't even ask her on direct examination to support her claims. You know, the question is whether she had a fair or there's a broader question, whether she had a fair hearing when, in fact, her lawyer doesn't even ask her. Those things which are necessary to establish her claim. Well, that's correct, Your Honor. But her lawyer, well, albeit he could have done a better job, he did ask a very thorough redirect examination of her. She was not found to be not credible. Everything that she said was testified as true. Including what was in the asylum application. That's correct. It was found to be credible. You know, if there were an off-the-record, I would go off-the-record. But. Hi, I read the New York Times this week, which I'm sure you read, about how many people are stacked up because they can't get their spouses into the country because the immigration service doesn't have time to process their cases because they're so busy with the new cases involving the kids who were brought here by their parents. And so there's no time to handle important cases where people are separated from their families for years because you can't get around to handling them. Now, here's one Mongolian woman who's been sold into prostitution. There may be some technical problems about why or how. And she's here. I mean, maybe you could use a broad decision saying that this is a group, a class, and that it affects a lot of people. But if the immigration service would just say, this is not the kind of case that's important enough to keep us busy so that we can't handle cases of people separated from their families. Now, this is all off the record. Nothing to do with the outcome of this case. But if I were you, I would go back and say, don't we have anything better to do than to go through this all over again to try to keep one Mongolian woman who was sold into slavery out of the country? I'm sure you'll think about that when you go back and report. I can certainly approach ICE about that. Well, I guess in following up on that too, you look at the broad picture of this case. And let me tell you then, let's say we manage the board for reformulation to apply the new test. Then it comes back up here on the due process argument about the exclusion of evidence and the evidentiary record, the translation. So, fine, we say the board should have done that. And the board will say, well, we don't have any jurisdiction to that until you raise a motion to reopen on an effective assistance. So now we've got two or three different petitions for review that come back to us when it all can be cleaned up. But just to remand to the IJ, let them make their case or not make their case. Simpler, isn't it? Which is an alternative to just let her come in and stay and don't bother everybody. And they totally misapprehend her. This is a fallback position. I mean, I know this case presents very sympathetic facts, and that Petitioner was definitely a victim of a crime and treated horribly in Mongolia. Well, look, she was not only a victim of a crime. She was raped repeatedly. She was then drugged and put in a brothel, forced into prostitution. She escaped. She goes back to Mongolia. He's trying to kill her. We know these are the facts. What her attorney didn't do was to present a lot of different theory on human trafficking, which is now before us. And so we have translation issues. We have ineffective assistance of counsel issues. We have certainly a sympathetic person. And we have a theory. We don't know whether the BIA is going to recognize human trafficking or victims of human trafficking as a social group or not. And there's a circuit split on that as well. Exactly. So if we remand just to the board for its reanalysis, we're going to be doing so on the basis of a very inadequate record and very inadequate theory. That's not going to be crisply presented, which would be, in my view, if we did that, it would be a lot better to have a fully developed record. And if she were incredible, that's a whole other matter. But the IJ found her credible.  Well, if Your Honor feels that the reason I say that is because I think you have an opportunity to respond. I'm not arguing with you. Right. I mean, our position would be that the translation errors were not prejudicial. If you look at the transcript, they were usually corrected with follow-up questioning that the ineffective assistance of counsel was not prejudicial. Petitioner has not come forward and said, I had all this evidence that I didn't get a chance to say, and I could have shown all this. There's no allegation of that. But if the Court feels that the record was severely impaired below and to the point that Petitioner's due process rights were violated, then perhaps a remand to the IJ would be appropriate. That would be a way to keep your agency busy for another month or two. Yes, yes. Who has the discretion here? Is it ICE or the Justice Department? For prosecutorial discretion? No. That would be ICE, yes, makes the decisions. And, Your Honor, I can certainly approach them about this case again after this argument. That's not a problem. Well, I think, you know, we do often in some of these cases, if the government is willing, send the case to the circuit mediator, because I know you have different clients to deal with. You can't sit here today and represent the government on any sort of settlement negotiations. Correct. But sometimes that's appropriate. Is that something that, as an attorney representing your client, that you would object to or think is appropriate or not appropriate in this case? Well, we almost never object to a case being sent to mediation, because that's something that we can certainly work out at mediation. You know, if the Court feels that that is an appropriate route, that is something I can take back to my clients and discuss with them. I can't make any representation one way or the other right now. All right. All right. Thank you. Thank you. That's it for you today, right? Yes. Okay. Have a good trip back. I have one more. Your Honor, just a couple of quick points. I think there were a number of times where counsel suggested that remand is a possibility based on the different possible findings of the Court. You know, to me, I think the most damaging thing about this case for Ms. Doerge was the fact that her attorney, when he presented the case, didn't know what the law was for a particular social group. So he was not able to determine how it worked in her favor. We can't take ineffective assistance of counsel claims up on direct review. You have to raise that, I think, in a motion to reopen first. So you've got some hurdles. That's part of the due process. I mean, on this record, I think you have a very tough, tough, if this is remanded to the Board, you've got some tough hurdles. With the record, the way it is, I would then argue for the Board to remand it to the judge. But I think the evolution of the law has overtaken this case as well, so that what was, you know, both her attorney didn't know what facts he should have presented at that time because he didn't know the law, but also because the law has evolved, there are still additional things that could be presented. I'm sorry? That's pretty much it? Yes, Your Honor. I will submit the case. Thank you very much. Thank you, counsel. All right. The case is carried. It will be submitted.
judges: Sessions, Reinhardt, Thomas